HATCHER *et al. v.* LORD, administrator.

115  619
116  275

The death of a plaintiff in execution after the execution had been issued and placed in the hands of the levying officer does not prevent such officer from enforcing the same nor from making any entries thereon that may be necessary to prevent the dormancy of the judgment, even though there be no legal representative upon the estate of the plaintiff in execution, and no request be made by any one interested in the judgment to have such entries made.

Submitted May 1,— Decided June 6, 1902.

Levy and claim.   Before Judge Hart.   Wilkinson superior court.   November 5, 1901.

*J. W. Lindsey, J. S. Davis,* and *Allen & Pottle,* for plaintiffs in error.   *F. Chambers & Son,* contra.

COBB, J.   Peyton Clay obtained a judgment against Parker, and the execution issued thereon was levied upon a tract of land; and on July 3, 1899, Emma Hatcher and others interposed a claim to the same.   Upon the trial of the claim case the claimants offered an amendment to the joinder of issue, in which they set up that Parker, the defendant in execution, died in 1879; that there never had been any administration on his estate, and that at the time of the levy in the present case his estate was unrepresented; that Peyton Clay, the plaintiff in execution, died on the 11th day of November, 1880; that E. W. Clay was appointed his administrator in January, 1881, and that letters of administration were issued to him, dated February 17, 1881; that he fully administered the estate and was dismissed as administrator in 1886, at the May term of the court of ordinary; that the estate of Peyton Clay had no representation from the time of the dismissal of E. W. Clay until after the levy in the present case; and that between these dates there was no one authorized to direct the collection of the execution, and all entries made on the execution between these dates are void.   The court upon demurrer struck this amendment, and to this ruling the claimants excepted.   The case proceeded to trial, at which it appeared that Peyton Clay obtained a judgment in the superior court against John F. Parker on October 5, 1874, and that execution issued thereon October 26, 1874.   The following entries appear upon the execution, signed by the sheriff: February 24, 1875, levy upon land; September 7, 1875, receipt for costs paid by the

plaintiff in execution; April 2, 1882, nulla bona; September 3, 1885, levy upon personal property (an entry on the execution shows that this property was claimed and a verdict rendered in favor of the claimants); January 2, 1885, receipt for costs paid by E. W. Clay, administrator; May 6, 1891, nulla bona; September 7, 1896, nulla bona; January 30, 1899, levy on the land in controversy and other lands; July 4, 1899, dismissal of levy on lands other than that now in controversy. On April 2, 1901, an order was passed directing that the case proceed in the name of Charles Lord, as administrator de bonis non of Peyton Clay, deceased, the plaintiff in execution. The trial resulted in a judgment finding the property subject to the execution. The claimants made a motion for a new trial, which was overruled, and to this ruling they also excepted. The only assignment of error which was insisted on in this court by counsel for plaintiffs in error in the brief filed was that which complained of the judgment striking the amendment to the joinder of issue. It is contended that, under the allegations of the amendment, the judgment is dormant, and that therefore the amendment should have been allowed and proof admitted which would have caused the trial to result in a verdict finding the property not subject to the execution.

If the sheriff had no authority to make entries upon the execution between the date of the dismissal of E. W. Clay as administrator of the estate of Peyton Clay and the appointment of Lord as administrator upon that estate, which was after the levy in the present case, according to the averments in the amendment, then the execution would be dormant for the reason that the other entries were not made within seven years from the date of the last entry made during the time that E. W. Clay was in office as administrator. It is contended that, as there was no administrator during this period, there was no person authorized to control or direct the progress of the execution, and that the sheriff had no authority to make entries thereon except at the special instance and request of some one who owned or controlled the execution. What effect has the death of the parties to an execution, or either of them, upon the writ? According to the provisions of the statute 29 Car. II, c. 3, § 16, which was of force in England at the time of our adopting statute, an execution which is delivered to the sheriff in the lifetime of the defendant may be levied upon his goods and chattels

notwithstanding the death of the debtor before a levy is made. 8-Enc. P. & P. 500. Under the present law of this State, land is placed upon the same footing as goods and chattels, so far as the lien of the judgment is concerned, and the judgment is a lien upon all of the property of the debtor from the date of its rendition; and our code declares that on the death of a defendant after final judgment, when no execution has been issued previously to such death, execution may issue as if such death had not taken place. Civil Code, § 5034. See also *Brooks* v. *Rooney*, 11 *Ga.* 424 (8); *Smith* v. *Lockett*, 73 *Ga.* 104. See also, in this connection, 1 Freeman on Executions (3d ed.), § 36. It will thus be seen that our code goes a step farther than the statute of Charles II. Under the code the death of a defendant in execution, either before or after the issuance of the execution, will not abate the writ. If the execution has issued, it may proceed; and if not issued, it will issue notwithstanding the death of the defendant in execution. While the question just discussed was made in the amendment offered by the claimants, it was not insisted on in the argument; but we have had no difficulty in reaching the conclusion just stated.

The controlling question in the case and the one which was stressed in the written argument filed for the plaintiffs in error is, what effect has the death of the plaintiff in execution upon the writ when it was issued during his lifetime? At common law the death of the plaintiff did not abate the writ, but it was the duty of the officer, notwithstanding such death, to levy the writ. See 8 Enc. P. & P. 499, and numerous cases cited in the notes; 1 Freeman, Ex. (3d ed.) § 37; Com. *v.* Whitney, 10 Pick. 434. In *Rogers* v. *Truett*, 73 *Ga.* 386, where the claimant tendered an issue that the plaintiff in execution had died before the levy, and the same was stricken upon demurrer, the judgment was affirmed by this court, and it was held that after the judgment had been obtained and execution issued thereon, the death of the plaintiff in execution would not interfere with the progress of the execution, but that the administrator or executor of the plaintiff in execution might have the same levied; and it was said that possibly his heirs at law, or any one else interested in the execution as transferee or otherwise, might cause a levy to be made. It was also said that, after the property levied on was claimed, some one who was entitled to control the execution should be made a party to the claim

case, such as executor or administrator of the estate of the plaintiff in execution, or the transferee holding under him. Mr. Justice Blandford, who delivered the opinion in that case, further remarked : " If the sheriff should receive and collect the money due on an execution after the plaintiff's death, then he would hold the same for the use and benefit of such representative of the deceased person as may have been, or may be, appointed to manage his estate. The payment by the defendant to the sheriff would be good, and would extinguish the judgment and satisfy the execution." It was argued by counsel for plaintiffs in error that it could be legitimately inferred from what was said in that case that the sheriff had no right to levy an execution after the death of the plaintiff in execution, unless there was some one interested in the execution who directed him to make the levy. The decision just referred to may contain an intimation to this effect, but the only point actually ruled in that case is that where there has been a direction by some one interested in the execution, a levy is lawful, notwithstanding the death of the plaintiff in execution, and that the sheriff would hold the proceeds of the levy for the benefit of whoever might be the owner of the execution. While that decision says that any one interested in the execution may direct a levy to be made notwithstanding the death of the plaintiff in execution, we do not think the authority of the sheriff to collect the sum due on the execution, either by voluntary payment on the part of the defendant in execution or by a seizure of his property, depends absolutely upon an express direction by some one interested in the execution. The execution is a mandate directed to the sheriff to seize the property of the defendant and sell the same in satisfaction of the debt upon which the judgment is founded. The execution is a command itself, independent of anything that may be said or done by those who are to receive the proceeds of the collection or the levy. The code makes it the duty of the sheriff " to execute and return the process and orders of the courts in this State, and of officers of competent authority, if not void, with due diligence, when delivered to them for that purpose, according to the provisions of the Code." Civil Code, § 4380.

When an execution has been issued during the lifetime of the plaintiff in execution and delivered to the sheriff, it constitutes a command to the sheriff to seize the property of the defendant in

satisfaction of the writ; and this command is not withdrawn or impaired by the fact that the plaintiff in execution dies after the execution is deliveral to the sheriff.    It is the duty of the sheriff to levy the writ and collect the debt upon which the judgment is founded, without any express direction from any one interested in the judgment.    If he collects the amount due on the writ and no one appears who is authorized to receipt him for the amount so collected, he holds the same for the benefit of the owners of the judgment, whoever they may be.    The writ is a continuing command to him, and he has authority to execute and return the same at any time without express direction to that effect from any one.    It is the command of the court, and when the amount is collected, if no one appears to receive it, upon his making return to the court, proper direction will be given as to what disposition to make of the funds in his hands.    The command contained in the writ may be withdrawn by the execution being taken away from his possession by some one authorized to control the same, or by direction from such person that the progress of the execution be suspended. See *Smith* v. *Martin*, 54 *Ga.* 600.    But until the execution is lawfully withdrawn from his possession, or direction is given by an authorized person that the progress of the execution be suspended, the officer to whom it is directed has authority to execute and return the same and make any entry thereon which the law authorizes.    If property of the defendant in execution can be seized and sold in satisfaction of the execution, it is the duty of the officer to make such seizure and sale.    If no property of the defendant can be seized and sold, it is the duty of the officer to make entries to this effect from time to time, in order to prevent the execution from becoming dormant.    Whether an officer would be liable for failure to make entries for the sole purpose of keeping the execution alive, when the defendant has no property to be levied on, need not now be decided; but certain it is that the officer has authority to make these entries, whether it is his absolute duty to do so or not.    It appears from the entries on the execution that it had been delivered to the sheriff during the lifetime of the plaintiff in execution.    The fact that the sheriff who made the entries after the death of the plaintiff in execution and before the administrator de bonis non was appointed was a different individual from the sheriff who received the execution from the clerk during the lifetime of the plain-

tiff in execution does not affect the right of the successor of the sheriff who received the execution to execute the same and make entries thereon. The code declares that it is the duty of the sheriff " to receive from the preceding sheriff all unexecuted writs and processes and proceed to execute the same." Civil Code, § 4380 (6). When an execution once reaches the sheriff, the fact that different persons occupy that office does not affect the rule above laid down; the statute in terms providing how an unexecuted writ shall pass from an officer to his successor. The sheriff had authority to make the entries on the execution, the same was not dormant, and the court did not err in striking the amendment of the claimants. It was necessary to the maintenance of the claim case that a duly appointed administrator should be made a party to that case. *Ellis* v. *Francis,* 9 *Ga.* 325 (2); *Rogers* v. *Smith*, 63 *Ga.* 172; *Ray* v. *Anderson*, 114 *Ga.* 795. This having been done in the present case, the case was properly before the court, and a judgment finding the property subject to the execution could be lawfully rendered.

*Judgment affirmed. All the Justices concurring, except Lewis, J., absent.*